# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

Mirna Saad,

                    Plaintiff,        Case No. 22-cv-11833

v.                              Judith E. Levy
                              United States District Judge

Menards, Inc.[1] and John Doe,

                    Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANT MENARD, INC.'S MOTION FOR SUMMARY JUDGMENT [11] AND DENYING AS MOOT DEFENDANT MENARD, INC.'S MOTION TO EXCLUDE THE TESTIMONY OF <u>PLAINTIFF'S EXPERT, JERALD BIRNBACH [10]</u>

Plaintiff Mirna Saad brings this premises liability case against Defendants Menard, Inc. and John Doe. Plaintiff was injured while shopping at Menard's store in Livonia, Michigan, when a package of plastic or rubber edging fell from a shelf and hit her on the head.

---

[1] This Defendant's name appears on the docket and in the complaint as "Menards, Inc." (ECF No. 1-2.) But the removal notice indicates that this entity was "improperly named" and that its correct name is "Menard, Inc." (ECF No. 1, PageID.1–2, 4–5.) Therefore, the Court refers to this Defendant as "Menard, Inc." or "Menard" in the opinion and order.

Before the Court is Menard's motion for summary judgment. (ECF No. 11.) Also before the Court is Menard's motion to exclude the testimony of Plaintiff's expert, Jerald Birnbach. (ECF No. 10.) For the reasons set forth below, Menard's motion for summary judgment is granted, and its motion to exclude Birnbach's testimony is denied as moot.

## I.  Factual Background

On May 21, 2021, Plaintiff was shopping at Menard's store in Livonia, Michigan. (ECF No. 1-2, PageID.12; ECF No. 11-2, PageID.255; ECF No. 11-6, PageID.296.) It was her first time at the store. (ECF No. 11-2, PageID.255.) She wanted to buy wooden edging and other gardening supplies. (*Id.* at PageID.255–256.)

Plaintiff entered the store at approximately 5:15 p.m. (*Id.* at PageID.256; ECF No. 11-6, PageID.296.) She grabbed bags of mulch and a gardenia plant from the garden area and placed them in her cart. (ECF No. 11-2, PageID.256–257.) Plaintiff was using a wireless headphone in one ear to talk on the phone to her husband, who lives and works abroad. (*Id.* at PageID.257, 261.) Her phone was in her pocket or her purse. (*Id.* at PageID.257.)

Plaintiff approached a pallet on the floor that had brown wooden edging on it. (*Id.* at PageID.257–258, 261; ECF No. 11-4, PageID.292; ECF No. 11-6, PageID.296.) Each piece of wooden edging was around three feet long. (ECF No. 11-2, PageID.257, 263.) At some point when she was reaching down toward the wooden edging, Plaintiff "heard something . . . coming at [her], but . . . by the time [she] lifted [her] head it was already hitting [her] on the head." (*Id.* at PageID.258; *see id.* at PageID.262, 268–270.) The object hit Plaintiff's head when she was bent down "three-quarter[s] of the way" and as she was lifting up or was "just going to straighten" her body. (*Id.* at PageID.269.) Plaintiff "felt like [the object] yanked [her] neck [and head] backwards," but the impact did not cause her to fall. (*Id.*; *see id.* at PageID.258, 269, 273.) Plaintiff was within two or three feet of the wooden edging; she could have reached out and touched it. (*Id.* at PageID.270.) Plaintiff hung up the call with her husband when she was hit on the head. (*Id.* at PageID.259.)

When Plaintiff looked at what she believed fell off a shelf and hit her, she saw that it was a plastic-wrapped package of black edging that was eight or ten feet long. (*Id.* at PageID.258, 263, 268, 270; ECF No.

11-3, PageID.290; ECF No. 11-6, PageID.296.) The black edging was made out of plastic or rubber, and it "felt . . . really heavy" when it hit her head.[2] (ECF No. 11-2, PageID.263, 268.) Plaintiff did not see the black edging before it fell or as it was falling because prior to it coming down, she "was just bent over on the floor picking up the wooden edging." (*Id.* at PageID.258; *see id.* at PageID.262.) Before the black edging fell, no part of Plaintiff's body had come into contact with that edging and her body was "[d]efinitely" not touching anything on the shelves above the wooden edging. (*Id.* at PageID.258.)

Plaintiff does not know what part of the black edging hit her—whether it was the middle portion or one of its ends. (*Id.*) She also does not know from where the edging fell. (*Id.* at PageID.261; *see id.* at PageID.262 (indicating that she "[d]efinitely" cannot say with certainty where the black edging came from).) Plaintiff testified that the edging "must have" fallen from directly above the wooden edging, given that

---

[2] The complaint alleges that "the merchandise/inventory that fell/struck Plaintiff appeared to be several metal pipes that were in a plastic bag . . . ." (ECF No. 1-2, PageID.12.) During her deposition, however, Plaintiff indicated that metal pipes did not fall on her. (ECF No. 11-2, PageID.263.) She was asked if the item that fell on her was "made out of rubber or some vinyl material," to which she responded: "Yeah, some kind of plastic more than just rubber. I don't know honestly. It wasn't metal." (*Id.*) She later stated that the item that fell on her "felt like metal" but was "plastic/rubber" edging. (*Id.* at PageID.268.)

"[i]t fell right on top of [her] head." (*Id.* at PageID.262.) She suspects that the black edging fell from "somewhere high." (*Id.*) At a minimum, she thinks it must have fallen from the shelf above the wooden edging— if not from somewhere higher—because of how she felt the black edging come down on her. (*Id.*; *see* ECF No. 11-4, PageID.292; ECF No. 11-5, PageID.294.)

While at the store (both before and after the incident), Plaintiff did not see the black edging stored on any of the shelves. (ECF No. 11-2, PageID.270.) She agreed during her deposition that she does not know where the black edging was shelved; that she "can't say, one way or another, how it was improperly shelved"; and that she only knows that the item fell. (*Id.* at PageID.263.)

Plaintiff testified that she believes that a Menard employee and a customer witnessed the incident. (*Id.* at PageID.258–259.) Plaintiff did not get their names. (*Id.* at PageID.259, 263.)

The employee who witnessed the incident was in the same aisle as Plaintiff. (*Id.* at PageID.270 ("If I looked to my right, she was there next to me.").) She "was maybe a few feet away from [Plaintiff]" and was

5

"stocking stuff on the shelves a few feet down."[3] (*Id.* at PageID.258, 270.) Plaintiff has "[n]o idea" what the employee "was stocking or working on." (*Id.* at PageID.271.) Plaintiff stated that the employee saw the incident because an individual "couldn't have missed it. If [the employee] did not see it, she witnessed . . . right after that the piece falling on the floor . . . ." (*Id.* at PageID.258.) When the black edging fell, it made a loud noise throughout the store that caused the employee to "look[ ] over," but the employee did not "come to ask if [Plaintiff] was okay." (*Id.* at PageID.271.) According to her deposition testimony, Plaintiff's theory regarding the incident is that the employee "could have moved something" and "triggered a chain reaction" that made the black edging fall on Plaintiff's head.[4] (*Id.*)

---

[3] In a subsequent portion of her deposition testimony, when asked about the distance between her and the employee when the incident occurred, Plaintiff said that they were "[c]lose." (ECF No. 11-2, PageID.270.) Plaintiff estimated that they might have been approximately fifteen to eighteen feet away from each other. (*Id.*) The employee "was not right next to [Plaintiff]." (*Id.*)

[4] Plaintiff disclosed her theory of what happened during her deposition when she was asked about it by her lawyer, Jordan Vahdat:

Q. As you sit here today, do you have a theory as to how the bag of inventory fell—came to fall on your head?

Regarding the customer who witnessed the incident, Plaintiff testified that she "seemed to be in the same aisle with [Plaintiff]" when the incident occurred. (*Id.* at PageID.259.) Yet Plaintiff "do[es]n't recall seeing her." (*Id.*) After the black edging fell, the customer approached Plaintiff, asked if she was okay, asked if she was in pain, and told the employee—who was the only other person there—"to get ice or get help." (*Id.* at PageID.258–259, 271; *see id.* at PageID.261.) Plaintiff is sure the customer saw the incident because the customer kept asking Plaintiff how she felt and kept suggesting that they call an ambulance. (*Id.* at PageID.259.)

---

A. Speculate, huh, Jordan? I honestly—when I told the story to my husband, I said I think that [the employee] was stocking things and— because something triggered that thing to fall on top of my head. I did not touch the shelf, that orange or whatever shelving that is there, the metal part. I had no business touching it. The stuff that I was just getting was on the floor, right. So I don't remember touching it. So I remember telling my husband that she must have moved something that just triggered a chain reaction and—maybe it was just hanging by a hair or something, right, and it just made it fall on top of my head. Now am I a hundred percent sure? That's my theory of how things happened. . . . I think something must have triggered it. I even hear— now that I'm telling you this, I can hear her stocking stuff over there and moving things, you know. So could have been that was a chain reaction.

(ECF No. 11-2, PageID.271.)

The customer and the employee sat Plaintiff down on either a chair or a box. (*Id.* at PageID.258.) The employee gave Plaintiff a cold drink wrapped in a piece of cloth to use instead of ice. (*Id.* at PageID.259.) Plaintiff was still in the aisle where the incident had happened, and she remained there for "maybe ten" minutes. (*Id.*)

Plaintiff then exited the store—without purchasing the items in her cart—and went to her car, where she made a phone call. (*Id.* at PageID.259, 263.) She stayed in her car for a few minutes. (*Id.* at PageID.259.) Because her pain was worsening, she decided to go back into the store "to let them know what happened." (*Id.*) Inside the store, she was directed to the customer desk toward the front of the building to discuss the incident. (*Id.*) Plaintiff estimated during her deposition that less than an hour had elapsed between the incident and when she reached the customer desk. (*Id.* at PageID.260.)

Plaintiff was at the customer desk for at least twenty minutes. (*Id.*) She initially spoke with a female and then with a male. (*Id.* at PageID.259.) The employee who had been in the aisle where the black edging fell was not present. (*Id.* at PageID.271.) At the customer desk, Plaintiff mentioned that her neck was hurting and that an employee

and a customer had witnessed the incident. (*Id.* at PageID.260.) There was no discussion of going to the location of the incident; Plaintiff was "just asked about what happened[, she] told them[, and she] left. Nothing else." (*Id.*)

The male employee at the customer desk, Kasey Sommerville,[5] completed an incident report on May 21, 2021. (*Id.* at PageID.263; ECF No. 11-6, PageID.296; ECF No. 15-6, PageID.791, 793, 799.) Sommerville was a front-end manager whose job duties included assisting guests, "manning the front" of the store, keeping the checkout lines down, and supervising the cashiers and the courtesy patrol team members.[6] (ECF No. 15-6, PageID.792; *see id.* at PageID.796, 798, 805 ("I don't work with the shelving. I work with the cashiers.").) The incident report indicates that the event at issue took place in Livonia at 6:30 p.m. on May 21, 2021. (ECF No. 11-6, PageID.296.) It contains the

---

[5] The incident report indicates that "Kacy Somerville" is the contact person for Menard. (ECF No. 11-6, PageID.296.) The Court presumes that "Kacy Somerville" is the same person as "Kasey Morris Sommerville" (ECF No. 15-6, PageID.791), who testified that he authored the report. (*Id.* at PageID.793.)

[6] According to Sommerville, the courtesy patrol team members gather the shopping carts in the parking lot and bring them back to the store. (ECF No. 15-6, PageID.794.) They also help customers who need assistance loading their cars in the parking lot. (*Id.*)

following description of what happened: "She alleged that while loading brown edging that some black edging fell on her head." (*Id.*) No witnesses are identified in the report. (*Id.*; ECF No. 15-6, PageID.801.) After filling out the report, Sommerville submitted it to an unidentified recipient. (ECF No. 15-6, PageID.800.) Sommerville did not visit the location in the store where the incident took place. (*Id.*)

Plaintiff eventually left the store and drove home. (ECF No. 11-2, PageID.264.) That evening, possibly at around 9:00 p.m., she went to the emergency room at Beaumont Dearborn. (*Id.*)

The incident directly injured her neck or cervical spine. (*Id.* at PageID.255, 272.) She experienced numbness in her hand that might have started that night and eventually "disappeared." (*Id.* at PageID.255.) Plaintiff testified that she "had a small bruise just on [her] head where [the black edging] fell—where it hit, but . . . nothing else." (*Id.* at PageID.258.) She did not photograph the bruise. (*Id.*) She currently has back pain but does not know if it is connected to the incident, given that she had preexisting back pain. (*Id.* at PageID.267, 272.)

Plaintiff, a teacher, did not miss any days of work but asked to leave early a few times. (*Id.* at PageID.253.) She testified that she is not "debilitated" and is "not to a point where [she] cannot function, but [she] cannot do things like [she] used to do before." (*Id.* at PageID.266; *see id.* at PageID.268.) She stopped her daily yoga practice, which involved using weights. (*Id.* at PageID.266; *see id.* at PageID.267.) She does not do as much yardwork as she used to and would like to. (*Id.* at PageID.267–268.) She cannot carry certain things because doing so triggers the pain in her neck.[7] (*Id.* at PageID.266; *see id.* at PageID.265, 268.)

## II. Procedural Background

On July 12, 2022, Plaintiff initiated this action in Wayne County Circuit Court against Defendants Menard and John Doe. (ECF No. 1-2.) The complaint contains four counts: (1) premises liability, (2) "negligence/gross negligence," (3) "*res ipsa loquitur*," and (4) negligent training and supervision. (*Id.*) The complaint states that Counts 1, 2, and 4 are against Menard and John Doe. (*Id.* at PageID.12,

---

[7] For example, carrying a case of water from Costco triggers Plaintiff's pain. (ECF No. 11-2, PageID.266.) And she can no longer move the couch when cleaning her house. (*Id.* at PageID.268.)

15, 19.) Count 3 appears to involve Menard. (*Id.* at PageID.18–19.) On August 8, 2022, Menard removed the case to federal court based on diversity jurisdiction. (ECF No. 1.)

Before discovery closed on September 15, 2023, Menard filed a motion for summary judgment (ECF No. 11) as well as a motion to exclude Birnbach's expert testimony. (ECF No. 10.) The summary judgment motion is fully briefed. (ECF Nos. 15, 16.) The motion to exclude Birnbach's testimony lacks responsive briefing; Plaintiff filed a response (ECF No. 12), but the Court struck that filing because it was untimely under Eastern District of Michigan Local Rule 7.1(e)(1)(A).[8] (ECF No. 14.) The Court will decide Menard's motions without a hearing. *See* E.D. Mich. LR 7.1(f)(2).

## III.  Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable

---

[8] At no point before or after her response was stricken did Plaintiff seek permission from the Court to file a late response to Menard's motion regarding her expert.

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.,* 305 F.3d 520, 526 (6th Cir. 2002)). "However, if the evidence is insufficient to reasonably support a jury verdict in favor of the nonmoving party, the motion for summary judgment will be granted." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989)). "Thus, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id.* (quoting *Anderson*, 477 U.S. at 252).

"Because jurisdiction in this case is predicated on diversity, the substantive law of the forum state—here, Michigan—applies." *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 995 (6th Cir. 2012) (citing *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001)). The Court "appl[ies] state law in accordance with the controlling

decisions of the state supreme court." *DeBusscher v. Sam's E., Inc.*, 505 F.3d 475, 479 (6th Cir. 2007) (quoting *Allstate Ins. Co. v. Thrifty Rent–A–Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001)). "If the state Supreme Court has not yet addressed the issue presented, this [C]ourt must predict how it would rule, by looking to 'all available data,' including state appellate decisions." *Ramadan v. Home Depot, Inc.*, 504 F. Supp. 3d 695, 704 (E.D. Mich. 2020) (citing *Safeco Ins. Co. of Am. v. CPI Plastics Grp., Ltd.*, 625 F. Supp. 2d 508 (E.D. Mich. 2008); *Kingsley Assocs., Inc. v. Moll Plastic Crafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995)).

## IV.   Analysis

### A. Menard's Motion for Summary Judgment

Menard seeks summary judgment on all of Plaintiff's claims and dismissal of the entire lawsuit against it. (ECF No. 11, PageID.228.) For the reasons set forth below, Menard's summary judgment motion is granted.

> i.   *Plaintiff's Claim Sounds Exclusively in Premises Liability, so she Cannot Pursue her Ordinary Negligence Claim (Count 2)*

In her complaint, Plaintiff asserts claims of premises liability (Count 1) and negligence (Count 2). (ECF No. 1-2, PageID.12–18.) Menard argues in its summary judgment motion that "Plaintiff's claim sounds in premises liability only and not negligence." (ECF No. 11, PageID.237.) Plaintiff's response is that there is a genuine issue of material fact as to whether Menard's employees breached their duty to keep the store reasonably safe. (ECF No. 15, PageID.596.) To resolve Menard's argument, the Court must determine whether Plaintiff's complaint sounds in premises liability or negligence—or both.

In Michigan, "[w]hether the gravamen of an action sounds in negligence or in premises liability is determined by considering the plaintiff's complaint as a whole, regardless of the labels attached to the allegations by the plaintiff." *Jeffrey-Moise v. Williamsburg Towne Houses Coop., Inc.*, 336 Mich. App. 616, 625 (2021) (citing *Buhalis v. Trinity Continuing Care Servs.*, 296 Mich. App. 685, 691–92 (2012)). Thus, "[c]ourts are not bound by the labels that parties attach to their

claims." *Pugno v. Blue Harvest Farms LLC*, 326 Mich. App. 1, 13 (2018) (quoting *Buhalis*, 296 Mich. App. at 691).

Michigan law distinguishes a premises liability claim—which is "premised on a condition of the land"—from a claim of ordinary negligence. *Jeffrey-Moise*, 336 Mich. App. at 625. "[A] claim of premises liability arises 'merely from the defendant's duty as an owner, possessor, or occupier of land.'" *Id.* at 626 (quoting *Lymon v. Freedland*, 314 Mich. App. 746, 756 (2016)). In contrast, "a claim of ordinary negligence is based on the underlying premise that a person has a duty to conform his or her conduct to an applicable standard of care when undertaking an activity." *Id.* at 624 (citing *Lymon*, 314 Mich. App. at 756). Therefore, if "plaintiff's claim is based on defendant's duty as the possessor of the land on which [the incident took place], and not upon defendant's ability to conform to a particular standard of care, [then Michigan courts] treat plaintiff's claim as one of premises liability." *Id.* at 625. "A separate action for ordinary negligence emerges where a plaintiff alleges that injury resulted from an activity that is separate from the condition of the land." *Ramadan*, 504 F. Supp. 3d at 705 (citing *James v. Alberts*, 464 Mich. 12, 18–20 (2001)); *Pugno*, 326 Mich. App. at

14 (indicating that a plaintiff proceeding on a theory of premises liability is not precluded from asserting "a separate claim [of ordinary negligence] grounded on an independent theory of liability based on the defendant's conduct" (quoting *Laier v. Kitchen*, 266 Mich. App. 482, 493 (2005))). Said differently, "Plaintiffs can pursue claims in ordinary negligence for the overt acts of a landowner on his or her premises, and a claim in premises liability for the condition of a premises." *Gorsline v. Speedway LLC*, No. 16-cv-13002, 2017 WL 4098828, at *5 (E.D. Mich. Sept. 15, 2017) (citing *Kachudas v. Invaders Self Auto Wash, Inc.*, 486 Mich. 913, 913–14 (2010)); *see Nathan, Tr. of Est. of Charles v. David Leader Mgmt., Inc.*, 342 Mich. App. 507, 512 (2022) ("[A]n ordinary-negligence claim may be brought 'for the overt acts of a premises owner on his or her premises . . . .'" (quoting *Kachudas*, 486 Mich. at 914)). Even if the defendant "may have created the condition on the land, that does not transform the premises liability action into one alleging ordinary negligence." *Jahnke v. Allen*, 308 Mich. App. 472, 476 (2014) (citing *Buhalis*, 296 Mich. App. at 692); *see also Jeffrey-Moise*, 336 Mich. App. at 625 ("Although plaintiff alleges that the dangerous condition was created by the actions of defendant or its employees—or more

accurately, their failure to act—that allegation does not transform a premises-liability action into one of ordinary negligence.").

As noted, Michigan "[c]ourts . . . look to the language of the complaint when determining the nature of a plaintiff's claim." *Ramadan*, 504 F. Supp. 3d at 707 (citing *Wheeler v. Central Mich. Inns, Inc.*, 292 Mich. App. 300, 304 (2011)). Here, Plaintiff's allegations in Counts 1 and 2 sound in premises liability. Plaintiff alleges that she was on Menard's "premises" as "a business invitee" when improperly shelved merchandise fell on her. (ECF No. 1-2, PageID.12, 15.) She alleges that Menard "owned, maintained, possessed and controlled the subject premises" and therefore owed her "a duty of due and reasonable care, including but not limited to a duty to inspect the premises and discover possible dangerous conditions." (*Id.* at PageID.13, 16.) Plaintiff also alleges that Menard "knew or should have known of the dangerous condition(s) creating an unreasonable risk of harm to persons such as Plaintiff." (*Id.* at PageID.12.) She further alleges that Menard, "as possessor and owner of the premises in question, knew or should have known of the dangerous and defective condition on its property and that this condition created a latent danger to invitee[s] on [its] property,

specifically, Plaintiff." (*Id.* at PageID.13; *see id.* at PageID.16 (alleging that "Defendants[ ] knew or should have known that the premises in question posed a latently dangerous condition to people whom Defendants invited onto its [sic] property, and specifically, to Plaintiff, and owed a duty to warn Plaintiff of said dangerous condition").) Plaintiff states that Menard "did not abate" the "defective and dangerous condition of the premises." (*Id.* at PageID.16.) She alleges that John Doe, Menard's employee, improperly stored or shelved the merchandise that fell on her. (*Id.* at PageID.12, 15.) In addition, Plaintiff states that Menard breached its duties by failing to keep its premises "in reasonable repair" and "in a reasonably safe condition"; failing to "inspect the premises for unsafe and unreasonably dangerous conditions"; ignoring that store merchandise "was stacked/stored/shelved in an unsafe/hazardous manner"; and failing to remove, to protect Plaintiff from, and to warn Plaintiff about the dangerous condition. (*Id.* at PageID.13–14, 16–17.)

The language in the complaint discussed above relates to a claim of premises liability. Plaintiff's repeated use of words such as "premises" and "dangerous and defective condition" indicate that her claim is

grounded in a theory of premises liability. *See Wheeler*, 292 Mich. App. at 304 ("Terms such as 'premises possessor' and 'dangerous condition on the land' relate to the elements of a premises liability, rather than ordinary negligence, claim."); *Ramadan*, 504 F. Supp. 3d at 707 ("[T]he language of [the plaintiff's] complaint makes it clear that his claims are grounded in premises liability. . . . The complaint consistently repeats words like 'premises' and 'dangerous/defective condition.' The *Wheeler* court concluded that terms like these—'premises possessor' and 'dangerous condition on the land'—refer to premises liability claims."). Plaintiff's allegations that Menard failed to use due care to keep its premises safe, failed to inspect the premises for unsafe and unreasonably dangerous conditions, and failed to warn Plaintiff about the dangerous condition also indicate that Plaintiff's claim is one of premises liability. *See England v. Meijer, Inc.*, No. 322065, 2015 WL 6161735, at *3 (Mich. Ct. App. Oct. 20, 2015) ("The plain words of plaintiff's complaint illustrate the true nature of her claim. She states that '[d]efendant had a duty to maintain its store in a safe condition and free from hazards so that customers, like the [p]laintiff, are not harmed by unsafe conditions,' and '[d]efendant breached its duty by . . . not

having one of [d]efendant's workers clean [the spill], warn people of it or mark the area off as a dangerous area.' . . . Terms such as these clearly relate to the elements of a premises liability, rather than an ordinary negligence, claim." (last alteration added) (citing *Wheeler*, 292 Mich. App. at 304)); *Russell v. Home Depot, Inc.*, No. 19-12501, 2021 WL 3566333, at *3 (E.D. Mich. Aug. 12, 2021) ("[The] complaint alleges that [the defendant] had a duty 'to use due care to maintain the safety of its store,' that it negligently failed to design its displays in a manner 'to minimize the risk of spills on the floor of the aisles,' and that it failed to inspect its aisles for 'hazardous conditions that posed an unreasonable risk of harm' to its invitees. . . . Michigan courts have observed that such language relates to principles of premises liability rather than ordinary negligence." (citing *England*, 2015 WL 6161735, at *3)), *aff'd*, No. 21-2909, 2022 WL 18955863 (6th Cir. Nov. 3, 2022).

Moreover, Plaintiff alleges a premises liability claim because she seeks to hold Menard liable due to a hazardous condition on the land and based on Menard's duty as the owner or possessor of the land. Plaintiff's allegations center around the hazardous condition: the improperly shelved merchandise. Her allegations involve the creation of

the condition and Menard's duty to protect her from it. Plaintiff's claim as pleaded focuses on Menard's alleged failure to maintain the premises in a reasonably safe condition based on its role as the owner or possessor of the land on which she was injured. The complaint therefore sounds exclusively in premises liability.

An argument in Plaintiff's response further supports the conclusion that her claim is one of premises liability. She argues that there is a genuine issue of material fact as to whether Menard's employees breached their duty to keep the store reasonably safe. (ECF No. 15, PageID.596.) The alleged duty to keep the premises reasonably safe is related to a theory of premises liability. *See Pugno*, 326 Mich. App. at 13 (finding that the alleged duties—including the duty "to make the premises safe for plaintiff" and "to maintain the premises in a safe manner"—sounded exclusively in premises liability). Plaintiff's argument thus demonstrates that she believes that her claim "is based on [Menard's] duty as the possessor of the land on which she [was injured] and not on [Menard's] ability to conform to a particular standard of care." *Jeffrey-Moise, Inc.*, 336 Mich. App. at 625.

Plaintiff's allegation that John Doe created the hazard by improperly shelving the merchandise does not provide a basis for her to simultaneously proceed on an ordinary negligence claim. In *Pugno v. Blue Harvest Farms LLC*, 326 Mich. App. 1 (2018), the Michigan Court of Appeals found that the plaintiff's allegation that the defendant had created the dangerous condition was insufficient to support a claim of ordinary negligence that was separate from his premises liability claim. The plaintiff in *Pugno* was injured on the premises of the defendant, a blueberry farm and packaging facility. *Id.* at 6. The plaintiff "passed a stack of three pallets of unassembled cardboard boxes" in the defendant's warehouse, and "[t]he top two bundles unexpectedly fell on [him]," which caused him to be injured. *Id.* The Michigan Court of Appeals concluded that the plaintiff's complaint "sound[ed] in premises liability only" because "[a]ll of plaintiff's allegations focus on the hazardous condition, [the defendant's] duty to protect plaintiff from the hazardous condition, or how [the defendant] created the condition. These allegations relate to the condition of the premises, i.e., the stack of pallets . . . ." *Id.* at 14.

The court of appeals determined that the plaintiff

23

d[id] not allege an ordinary negligence claim that is "grounded on an independent theory of liability based on the defendant's conduct . . . ." *Id.* at 493, 702 N.W.2d 199 (opinion by NEFF, J.). Instead, plaintiff only alleges that [the defendant], a week before the incident, created the dangerous condition, i.e., the stacked pallets, and failed to maintain the pallets in a safe manner. An action sounds in premises liability rather than ordinary negligence "even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury." *Buhalis*, 296 Mich. App. at 692, 822 N.W.2d 254. There is no allegation that [the defendant's owner] or one of [the defendant's] employees actively knocked the pallets over or engaged in direct conduct that caused the pallets to fall onto plaintiff. [The defendant's owner] was not actively stacking the pallets when they fell. The pallets had been stacked in that manner nearly a week earlier and were simply a condition of the premises. Claims that [the defendant] failed to protect and warn plaintiff of the unreasonable risks of injury sound squarely in premises liability. Because plaintiff did not plead sufficient allegations supporting ordinary negligence, the trial court erred when it allowed plaintiff to proceed on that theory.

*Id.* at 15–16.

Like the plaintiff in *Pugno*, Plaintiff fails to plead sufficient allegations to support a theory of ordinary negligence. Her allegation that John Doe improperly shelved the merchandise goes to the creation of the hazardous condition that injured her, and it forms the basis of her premises liability claim. Plaintiff alleges that Menard failed to

discover the hazard and to alert her and others about it. But Plaintiff does not allege that Menard or John Doe took any affirmative action or "engaged in direct conduct that caused" the merchandise to fall on her. *Id.* at 16. There is no allegation in the complaint that a Menard employee was handling the merchandise when Plaintiff was in the aisle or actively knocked into the merchandise and caused it to fall.[9] "Absent allegations of discrete conduct that is separate from the land, [Plaintiff]

---

[9] Plaintiff testified that her theory regarding the incident is that the employee who was in the same aisle as her "could have moved something" and "triggered a chain reaction" that caused the black edging to fall. (ECF No. 11-2, PageID.271.) But Michigan courts instruct that "an action should be determined by reading the entire complaint, looking beyond procedural labels, and determining the exact nature of the claim." *Pugno v. Blue Harvest Farms LLC*, 326 Mich. App. 1, 13, (2018) (citing *Buhalis v. Trinity Continuing Care Servs.*, 296 Mich. App. 685, 691–92 (2012)) ("On review of the original and amended complaints, it is clear that the duties alleged sound exclusively in premises liability."); *see Jeffrey-Moise v. Williamsburg Towne Houses Coop., Inc.*, 336 Mich. App. 616, 625 (2021) ("[A] review of plaintiff's complaint as a whole reveals that plaintiff's claim is one of premises liability."); *Laier v. Kitchen*, 266 Mich. App. 482, 490–493 (2005) (reviewing the plaintiff's allegations regarding liability to analyze the nature of the plaintiff's claim; concluding that the plaintiff "pleaded a viable claim of ordinary negligence" as "an additional theory of liability separate from that of premises liability").

Here, Plaintiff's theory suspecting a "chain reaction" does not appear in the complaint. She alleges that John Doe improperly shelved the merchandise that fell on her (ECF No. 1-2, PageID.12, 15); however, she does not allege that John Doe or a different Menard employee caused the merchandise to fall in handling the merchandise, by "mov[ing] something," or through any other overt or affirmative conduct. In other words, the complaint does not contain allegations of direct conduct by Menard or its employees that caused the merchandise to fall, as discussed above. Therefore, Plaintiff's allegations do not sufficiently support a theory of ordinary negligence.

cannot maintain a cause of action in ordinary negligence." *Ramadan*, 504 F. Supp. 3d at 707; *see Jeffrey-Moise*, 336 Mich. App. at 625 ("Although plaintiff alleges that the dangerous condition was created by the actions of defendant or its employees . . . that allegation does not transform a premises-liability action into one of ordinary negligence." (citing *Buhalis*, 296 Mich. App. at 692)); *Weiss v. Blarney Castle Oil Co.*, No. 364327, 2023 WL 8868084, at *4 (Mich. Ct. App. Dec. 21, 2023) ("The fact that plaintiff alleges that the [defendant's employee] created the [allegedly dangerous] condition . . . is immaterial" to the court's finding that "[t]he action sounded solely in premises liability" because "plaintiff's theory of liability arose solely from defendant's duty as an owner, possessor, or occupier of land." (citing *Buhalis*, 296 Mich. App. at 691–92)).

For these reasons, Plaintiff's claim sounds exclusively in premises liability. Plaintiff may not proceed with both the premises liability claim and the ordinary negligence claim. Accordingly, Menard is entitled to summary judgment on Plaintiff's ordinary negligence claim (Count 2).

ii.   *Plaintiff Fails to Establish Actual or Constructive Notice, an Essential Element of her Premises Liability Claim (Count 1)*

Menard seeks summary judgment as to Plaintiff's premises liability claim in Count 1 on the basis that Plaintiff fails to present evidence that Menard had actual or constructive notice of the alleged hazardous condition. (ECF No. 11, PageID.238.) Plaintiff's position is that there is a genuine issue of material fact as to whether Menard had actual or constructive notice. (ECF No. 15, PageID.598.) Plaintiff argues that the black edging was improperly shelved by one or more of Menard's employees. (*Id.* at PageID.600.) Plaintiff also argues that there is an issue of material fact as to whether Menard "would have discovered the misplaced tubular edging upon inspection" because of testimony from Menard employees that "there was no training on safety procedures or protocol requiring employees to inspect the aisles." (*Id.* at PageID.600–601.)

"In order to successfully advance . . . a [premises liability] claim, an invitee[10] must show that the premises owner breached its duty to the

---

[10] "An 'invitee' is a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and

invitee and that the breach constituted the proximate cause of damages suffered by the invitee." *Lowrey v. LMPS & LMPJ, Inc.*, 500 Mich. 1, 8 (2016) (citing *Riddle v. McLouth Steel Prod. Corp.*, 440 Mich. 85, 96 (1992)). "Generally, an owner of land owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Whitaker v. Meijer Inc.*, No. 363242, 2024 WL 295264, at *1 (Mich. Ct. App. Jan. 25, 2024) (quoting *Buhalis*, 296 Mich. App. at 693). "A premises owner breaches its duty of care when it 'knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect.'" *Lowrey*, 500 Mich. at 8 (quoting *Hoffner v. Lanctoe*, 492 Mich. 450, 460 (2012)).

---

make it safe for the invitee's reception." *Gabrielson v. Woods Condo. Ass'n, Inc.*, No. 364809, 2024 WL 56376, at *6 (Mich. Ct. App. Jan. 4, 2024) (quoting *Stitt v. Holland Abundant Life Fellowship*, 462 Mich. 591, 596–97 (2000), *as amended* (Sept. 19, 2000)). "A person invited on the land for the owner's commercial purposes or pecuniary gain is an invitee . . . ." *Id.* (quoting *Benton v. Dart Props., Inc.*, 270 Mich. App. 437, 440 (2006)). "[A]n invitee is entitled to the highest level of protection under premises liability law." *Hollerbach v. Target Corp.*, 443 F. App'x 936, 938 (6th Cir. 2011) (quoting *Stitt*, 462 Mich. at 597; citing *Banks v. Exxon Mobil Corp.*, 477 Mich. 983, 725 (2007)). Here, there is no dispute that Plaintiff was an invitee of Menard at the time of the incident.

In a premises liability case, "a plaintiff must prove that the defendant had actual or constructive notice of the alleged dangerous condition." *Ramadan*, 504 F. Supp. 3d at 708; *see Lowrey*, 500 Mich. at 10 ("To prevail on her claim, plaintiff had to establish that defendant, as a premises owner, possessed actual or constructive notice of the dangerous condition."); *Basehore v. Short*, No. 366596, 2024 WL 1131023, at *7 (Mich. Ct. App. Mar. 14, 2024) ("[F]or a plaintiff to be entitled to relief in a premises-liability action, the plaintiff must establish that the defendant had actual or constructive notice of the dangerous condition on the land that caused the plaintiff's injury."); *Saenz v. Kohl's Dep't Stores, Inc.*, 834 F. App'x 153, 155 (6th Cir. 2020) (indicating that to prevail on a premises liability claim in Michigan, a plaintiff "ha[s] to show either actual or constructive notice"). "[A]ctual or constructive notice of the relevant dangerous condition is an essential element in establishing a premises liability claim." *Albitus v. Greektown Casino, LLC*, 339 Mich. App. 557, 563 (2021) (citing *Lowrey*, 500 Mich. at 8–9). "It is plaintiff's burden to establish a question of fact as to whether defendants had notice of the condition." *Zoma v. MGM Grand*

29

*Detroit, LLC*, No. 341149, 2019 WL 1371500, at *2 (Mich. Ct. App. Mar. 26, 2019) (citing *Lowrey*, 500 Mich. at 3).

A defendant had constructive notice if "the hazard was of such a character, or had existed for a sufficient time, that a reasonable premises possessor would have discovered it." *Lowrey*, 500 Mich. at 11–12; *Banks v. Exxon Mobil Corp.*, 477 Mich. 983, 983–84 (2007) ("Constructive notice may arise not only from the passage of time itself, but also from the type of condition involved, or from a combination of the two elements." (citing *Kroll v. Katz*, 374 Mich. 364, 372 (1965)). "Generally, the question of whether a defect has existed a sufficient length of time and under circumstances that the defendant is deemed to have notice is a question of fact, and not a question of law." *Banks*, 477 Mich. at 984 (citing *Kroll*, 374 Mich. at 371). "Where the possessor is the one who created the condition, knowledge of the condition is imputed to the possessor, but where the condition is created by a third person, there is a factual question regarding whether the possessor should have reasonably discovered the condition." *Pugno*, 326 Mich. App. at 18 (quoting *Pippin v. Atallah*, 245 Mich. App. 136, 145 n.2

(2001); citing *Williams v. Borman's Foods, Inc.*, 191 Mich. App. 320, 321 (1991)).

The defendant "does not have to present evidence of routine or reasonable inspection in order to prove that it did not have notice." *Ramadan*, 504 F. Supp. 3d at 708 (citing *Lowrey*, 500 Mich. at 10). "Rather, a defendant can show that it is entitled to summary judgment 'by demonstrating that [the] plaintiff failed to present sufficient evidence of notice.'" *Id.* (alteration in original) (quoting *Lowrey*, 500 Mich. at 10). "[I]n response to a summary disposition motion[11] based on an alleged lack of notice, the burden is on the plaintiff to present evidence of actual or constructive notice." *Eggerton v. Detroit Hotel Servs., LLC*, No. 360251, 2022 WL 17874400, at *3 (Mich. Ct. App. Dec. 22, 2022) (citing *Lowrey*, 500 Mich. at 10).

Here, Plaintiff does not meet her burden of proving that Menard had actual or constructive notice. For the reasons set forth below, the

---

[11] The standard for summary disposition under Michigan Court Rule 2.116(C)(10) overlaps with the standard for summary judgment under Federal Rule of Civil Procedure 56. Michigan Court Rule 2.116(C)(10) provides that a motion for summary disposition may be based on the following ground: "Except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."

Court finds that Plaintiff fails to make the necessary showing of notice for her premises liability claim to survive summary judgment.

### a. Actual Notice or Creation of the Hazard

Plaintiff does not clearly argue in her response that Menard had actual notice of the hazard. Plaintiff states:

> In this matter, a package of black tubular edging was shelved in the wrong spot. According to Mr. [Emanuel] Jones, [a Menard employee,] the type of edging that fell onto Plaintiff requires either one extremely strong person or two people to lift it. (Exhibit 5, p. 40-41). Clearly, one or more employees at Menard's negligently placed the merchandise on a high shelf; therefore, a question of fact exists concerning Defendant's notice of this potentially dangerous condition.

(ECF No. 15, PageID.600.) Thus, Plaintiff appears to argue that there is a question of fact as to whether Menard had notice because one or more Menard employees handled the black edging.[12]

Plaintiff does not identify a question of fact as to actual notice. She does not offer evidence that Menard had actual notice of the black edging prior to the incident. Neither of the two Menard employees who were deposed—Sommerville and Jones—testified that they were aware

---

[12] The Court notes that Plaintiff alleges in the complaint that a single employee identified as John Doe (and not multiple employees) was responsible for improperly storing or shelving the black edging. (ECF No. 1-2, PageID.12, 15.)

of the black edging before it fell. (*See generally* ECF Nos. 15-5, 15-6.) Plaintiff testified that she did not see the black edging before it struck her or as it was falling down. (ECF No. 11-2, PageID.258, 262.) Plaintiff does not know exactly from where the black edging fell. (*Id.* at PageID.261.) She believes that it "must have [fallen] from somewhere high" but agreed during her deposition that she cannot say with certainty where it came from. (*Id.* at PageID.262.)

Plaintiff testified that there was an employee in the same aisle as her who witnessed the incident or the events that immediately followed; however, Plaintiff did not testify that the employee was aware of the black edging before it fell. (*Id.* at PageID.258, 263, 270–271.) The incident report that Sommerville completed makes no mention of an employee having seen the black edging prior to the incident.[13] (ECF No. 11-6, PageID.296.) "Even assuming an employee was present, [their] presence would not by itself have indicated that [they] knew of the [black edging] before [it fell on Plaintiff]." *Lowrey*, 500 Mich. at 11.

---

[13] The incident report also does not mention that anyone else (including an employee) was present when the incident took place. (ECF No. 11-6, PageID.296.) Plaintiff testified, however, that she believes that she reported to the person at the customer desk that an employee and a customer witnessed the event. (ECF No. 11-2, PageID.260.)

Thus, Plaintiff does not demonstrate that a question of fact exists as to whether Menard had actual notice of the black edging before it fell on her. In fact, Plaintiff presents no evidence from which a reasonable jury could conclude that Menard had actual notice of the hazard.

To the extent that Plaintiff states that "one or more" Menard employees shelved the black edging "in the wrong spot" to show that Menard created the dangerous condition (ECF No. 15, PageID.600), she does not offer sufficient evidence for a fact finder to infer that Menard actually created the hazard, and therefore, knew about it. "Where the possessor is the one who created the condition, knowledge of the condition is imputed to the possessor . . . ." *Pugno*, 326 Mich. App. at 18; *Hollerbach v. Target Corp.*, 443 F. App'x 936, 938 (6th Cir. 2011) ("[K]nowledge of a hazardous condition created by a premises possessor may be inferred." (collecting cases)). "The notice doctrine does not shield a premises possessor from liability from injury where the premises possessor himself unreasonably creates, tolerates or causes a dangerous condition." *Hollerbach*, 443 F. App'x at 938 (citing *Clark v. Kmart Corp.*, 465 Mich. 416, 419 (2001)); *see Russell*, 2021 WL 3566333, at *5 ("[A] premises possessor is liable for an injury 'where the premises owner or

possessor himself unreasonably creates, tolerates or causes a dangerous condition.'" (quoting *Cerrito v. K-Mart Corp.*, No. 294660, 2011 WL 1519649, at *3 (Mich. Ct. App. Apr. 21, 2011))). Therefore, a plaintiff can "recover under a premises liability theory by showing that Defendant . . . created (or had actual or constructive notice of) an unsafe condition at its store that led to Plaintiff's injury." *Kassab v. Target Corp.*, No. 16-12788, 2017 WL 2880086, at *6 (E.D. Mich. July 6, 2017).

In this case, Plaintiff does not establish that Menard or any of its employees created the dangerous condition. Plaintiff asserts in her response that one or more employees of Menard improperly shelved the black edging. (ECF No. 15, PageID.600.) But this assertion is based entirely on the testimony of Jones, an employee of Menard whose employment began in October 2021—five months after the incident. (ECF No. 15-5, PageID.740.) Plaintiff states that "[a]ccording to Mr. Jones, the type of edging that fell onto Plaintiff requires either one extremely strong person or two people to lift it." (ECF No. 15, PageID.600; ECF No. 15-5, PageID.773–774.) Yet Plaintiff does not indicate how Jones' testimony regarding the strength and number of people it takes to lift the black edging leads her to conclude in the next

sentence that "[c]learly, one or more employees at Menard's"—as opposed to a third party—"negligently placed the merchandise on a high shelf." (ECF No. 15, PageID.600.) A jury considering this portion of Jones' testimony in the light most favorable to Plaintiff could not reasonably conclude that one or more Menard employees must have handled the black edging before it fell on her. *See Russell*, 2021 WL 3566333, at *5 ("Because the sandy substance [the plaintiff slipped on] was in an area of the store accessible to customers, . . . it cannot be inferred that an employee must have spilled the substance, *see Wellman*, 192 F. Supp. 2d at 773 (holding that the plaintiff could not establish that the storeowner caused the dangerous condition when the hazard could have been caused by a customer).").

Any argument by Plaintiff that Menard or its employees created the hazard fails because she does not present evidence that eliminates the need for conjecture or speculation. "[A] plaintiff cannot only present one theory of the alleged circumstances that caused the accident if [s]he is unable to sufficiently eliminate other theories 'to take the case out of the realm of conjecture.'" *Ramadan*, 504 F. Supp. 3d at 708 (quoting *Guthre v. Lowe's Home Ctrs., Inc.*, 204 F. App'x 524, 527 (6th Cir.

36

2006)). Because Plaintiff's theory requires conjecture or speculation, she does not show that Menard created the hazard. Nor does she identify a question of fact as to this issue. *See Russell*, 2022 WL 18955863, at *3 (The plaintiff's "assertion that [the defendant's] purportedly unsafe display . . . caused her to slip and fall is purely speculative and does not create a triable issue of fact."). Based on the record before the Court, Plaintiff does not provide sufficient evidence to infer that Menard created, and therefore had knowledge of, the hazard. *See Dajlani v. Wal-Mart Stores E., LP*, No. 20-12983, 2021 WL 5303925, at *4 (E.D. Mich. Nov. 15, 2021) ("[T]here is insufficient evidence that [the defendant] created the condition, so knowledge of the condition cannot be imputed onto [the defendant]." (citing *Ramadan*, 504 F. Supp. 3d at 709)).

Accordingly, Plaintiff fails to show that Menard had actual notice of the hazardous condition. Plaintiff also fails to show that Menard created the condition such that notice can be inferred.

### b. *Constructive Notice*

Plaintiff does not meet her burden with respect to constructive notice. In her response, she does not address the character or duration

of the hazard at issue in this case to demonstrate that Menard had constructive notice.

"To establish constructive notice, a plaintiff must prove that 'the hazard was of such a character, or had existed for a sufficient time, that a reasonable premises possessor would have discovered it.'" *Russell*, 2021 WL 3566333, at *6 (quoting *Lowrey*, 500 Mich. at 11–12). "The burden of presenting evidence of notice regarding dangerous conditions always rests with the plaintiff." *Saenz*, 834 F. App'x at 157 (quoting *Duboise v. Wal-Mart Stores, Inc.*, No. 17-1454, 2018 WL 1940412, at *2 (6th Cir. Mar. 27, 2018)). The defendant, "by contrast, has no burden to show 'that it did not have . . . constructive notice of the condition.'" *Id.* (quoting *Lowrey*, 500 Mich. at 8). The defendant "is not required to go beyond showing the insufficiency of plaintiff's evidence." *Lowrey,* 500 Mich. at 9.

Here, Plaintiff does not satisfy her burden of "'proffer[ing] evidence' that [Menard] 'should have known' about the [black edging] 'because of its character or the duration of its presence.'" *Saenz*, 834 F. App'x at 157 (quoting *Lowrey*, 500 Mich. at 11). Plaintiff does not demonstrate that the hazard "was of such a character that it should

38

have been discovered." *Whitaker*, 2024 WL 295264, at *2. The incident report states that "some black edging fell on [Plaintiff's] head." (ECF No. 11-6, PageID.296.) Plaintiff testified that the edging was made out of plastic or rubber, was eight to ten feet long, "felt . . . really heavy," and was wrapped in plastic. (ECF No. 11-2, PageID.258, 263, 268, 270; *see* ECF No. 11-3, PageID.290.) She does not know where the black edging was before it fell on her. (ECF No. 11-2, PageID.261–262.) She also does not know where the black edging was shelved in the store, so she cannot say "how it was improperly shelved." (*Id.* at PageID.263.) She testified that she did not come into contact with the black edging before it fell and that her body was not touching the shelves or anything on the shelves before it fell. (*Id.* at PageID.258, 271.) Neither Sommerville nor Jones testified as to what happened; they did not witness the incident and did not conduct a follow-up investigation in the aisle where the incident occurred. Jones had never carried this type of edging and does not know the length or the weight of the package of edging that fell on Plaintiff. (ECF No. 15-5, PageID.772–774.) "[T]hese facts do not support any particular conclusion relative to the character of the [black edging]." *Russell*, 2021 WL 3566333, at *6 (citing *Lowrey*,

500 Mich. at 12) (finding no constructive notice). Thus, the evidence in the record about the character of the black edging does not establish that Menard had constructive notice of it before it fell. *See Russell*, 2022 WL 18955863, at *4 ("[N]o reasonable jury could conclude that [the defendant] had constructive notice of the condition" in part because the plaintiff "conceded that she did not know how big of an area the sandy substance covered, and that she did not see anything out of the ordinary when she walked down Aisle 18." (internal quotation marks omitted)).

In addition, Plaintiff identifies no evidence regarding the amount of time the hazard was present. Plaintiff does not know where the black edging fell from. (ECF No. 11-2, PageID.258, 261–262.) She does not provide an estimate of when it was mis-shelved or how long it was improperly stored. As noted above, there is no evidence that a Menard employee was aware of the black edging before it fell. "While 'Michigan law does not require [Plaintiff] to have personal knowledge of how long' the [black edging] was there, 'she does have to present some affirmative evidence that points to the condition having existed for more than mere seconds.'" *Saenz*, 834 F. App'x at 158 (quoting *Guthre*, 204 F. App'x at 527). Plaintiff fails to do so. A reasonable jury reviewing the record in

the light most favorable to Plaintiff could not conclude that the black edging was present for a sufficient amount of time such that Menard should have discovered it. *See Pritchard v. Nw. Airlines, Inc.*, 111 F. App'x 406, 410 (6th Cir. 2004) ("In the absence of any evidence tending to show how long the condition had existed, a jury could not conclude that [the defendant] should have known of it."); *Kassab*, 2017 WL 2880086, at *6 ("[T]here is no evidence as to the duration of the alleged hazard . . . , so it cannot be inferred that this hazard existed for a sufficient time to charge [the defendant] with constructive notice of it."). Plaintiff "has not carried her burden of establishing a genuine issue of material fact as to notice" because she "present[s] no evidence that would allow one to infer the duration of the condition prior to [the incident], without which we are left only with speculation." *Zoma*, 2019 WL 1371500, at *2; *see Pritchard*, 111 F. App'x at 410 ("This proof amounts to no more than speculation about the condition . . . before the fall and the length of time it had been [present]. In the absence of any evidence tending to show how long the condition had existed, a jury could not conclude that [the defendant] should have known of it."). But "[a] 'jury [cannot be] left to speculate as to when a [hazardous condition]

occurred to determine whether defendant's employees had constructive notice.'" *Misko v. Speedway, LLC*, No. 16-cv-13360, 2018 WL 2431638, at *6 (E.D. Mich. May 29, 2018) (second alteration in original) (quoting *Guthre*, 204 F. App'x at 527); *see Rippy v. Home Depot U.S.A., Inc.*, No. 09-CV-12043, 2010 WL 891154, at *3 (E.D. Mich. Mar. 10, 2010) (finding that the duration of the condition was a "matter[ ] of conjecture" and that "[w]ithout some evidence indicating that the condition 'existed a sufficient length of time that [Defendant] should have had knowledge of it,' Plaintiff cannot satisfy the first element of his *prima facie* [premises liability] case and judgment in Defendant's favor is proper" (quoting *Serinto v. Borman Food Stores*, 380 Mich. 637, 640–41 (1968))). Therefore, Plaintiff does not carry her burden of establishing a genuine issue of material fact as to constructive notice.

Plaintiff states in her response that "employees from Menard's testified that there was no training on safety procedures or protocol requiring employees to inspect the aisles (Exhibits 5 and 6), thus creating an issue of material fact on whether or not Defendant would have discovered the misplaced tubular edging upon inspection." (ECF No. 15, PageID.600–601.) However, Plaintiff's failure to raise a question

of fact as to constructive notice makes it unnecessary for the Court to consider evidence of Menard's inspections at this time.

The Michigan Court of Appeals indicates that a premises owner has a duty "to inspect for dangers on behalf of invitees" and that the Michigan Supreme Court in *Lowrey* did not dispense with that duty. *Albitus*, 339 Mich. App. at 563. According to the court of appeals, the *Lowrey* court

> clarified how th[e] duty [of a premises owner to inspect] operates at the summary-disposition stage of a proceeding. Specifically, the Court determined that a defendant need not "present evidence of a routine or reasonable inspection . . . to prove a premises owner's lack of constructive notice of a dangerous condition on its property." *Id.* at 10, 890 N.W.2d 344. Only when the plaintiff has successfully established a question of fact regarding constructive notice might evidence of inspection efforts be needed for the defendant to "negate[ ] an essential element of the nonmoving party's claim . . . ." See *id.* at 7, 890 N.W.2d 344 (quotation marks and citation omitted). Otherwise, a defendant can meet its burden simply by demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." See *id.* at 7, 890 N.W.2d 344 (quotation marks and citation omitted).

*Id.* at 563–64 (first and second alterations added).

Under *Lowrey*, Menard does not have to present evidence of "a routine or reasonable inspection" to show that it lacked constructive

43

notice of the black edging. *Id.* (quoting *Lowrey*, 500 Mich. at 10). Because Menard demonstrates that Plaintiff's evidence is insufficient to establish an essential element of her premises liability claim—actual or constructive notice—Menard has met its burden. *Id.* at 564. And because Plaintiff has not raised a question of fact regarding constructive notice, there is no need for the Court to consider evidence of Menard's inspection efforts. *Id.* Therefore, Plaintiff's argument regarding aisle inspections by Menard's employees lacks merit.

Other courts have rejected similar arguments—regarding constructive notice and inspections by a defendant—based on *Lowrey*. *See Grimwood v. Am. Airlines, Inc.*, 323 F. Supp. 3d 928, 933–34 (E.D. Mich. 2018) (rejecting the plaintiff's argument that there was "a jury issue regarding whether reasonable inspection by [the defendant] . . . 'should' have [led it to] discover[ ] the condition" because "the Michigan Supreme Court 'has never required a defendant to present evidence of a routine or reasonable inspection . . . to prove a premises owner's lack of constructive notice of a dangerous condition on its property'" (quoting *Lowrey*, 500 Mich. at 8–10)); *Armstrong v. Nathan Bining, M.D., PLLC*, No. 358873, 2023 WL 3260608, at *3 (Mich. Ct. App. May 4, 2023)

("[P]laintiff argues that defendants breached their duty to inspect the premises for unsafe conditions," but the Michigan Supreme Court "has never required a defendant to present evidence of a routine or reasonable inspection . . . to prove a premises owner's lack of constructive notice of a dangerous condition on its property." (quoting *Lowrey*, 500 Mich at 10)); *Valdes v. Menard, Inc.*, No. 344073, 2019 WL 6340263, at *4 (Mich. Ct. App. Nov. 26, 2019) ("Contrary to plaintiff's argument, defendant was not required to produce evidence of a routine or reasonable inspection in order to prove its lack of constructive notice of a dangerous condition and be entitled to summary disposition; a premise owner may 'establish its entitlement to summary disposition by demonstrating that plaintiff failed to present sufficient evidence of notice.'" (footnotes omitted) (quoting *Lowrey*, 500 Mich. at 10)); *Russell*, 2021 WL 3566333, at *7 (stating that the plaintiff's argument that the defendant "is unable to show a lack of constructive notice because it failed to fulfill its duty to inspect its premises . . . may be dispensed with summarily. To be entitled to summary judgment on a premises liability claim, a defendant need not present evidence of routine or reasonable inspection to prove that it did not have notice; it need show

only that the plaintiff failed to present sufficient evidence of notice."
(citing *Lowrey*, 500 Mich. at 8–12)); *Harris v. CW Fin. Servs. LLC*, No.
329868, 2017 WL 104572, at *3 (Mich. Ct. App. Jan. 10, 2017) ("[I]n
light of *Lowrey*, plaintiff's contention that defendants were required, in
asserting that they did not have constructive notice, to provide proof
that a reasonable inspection was conducted, or if conducted would not
have revealed the alleged dangerous condition, is without merit.");
*Kassab*, 2017 WL 2880086, at *5–6 (finding that the plaintiff's theory of
constructive notice—that if the defendant had "conducted reasonably-
timed inspections of the area where Plaintiff fell, it would have
discovered the unsafe condition that purportedly caused th[e] fall"—was
"legally flawed" because the reasoning in *Lowrey* "applies with full force
here" (internal quotation marks and citation omitted)).

Further, as this court noted in a different case, Plaintiff's
argument regarding inspections is "factually . . . flawed" in light of her
failure to provide evidence that shows how long the black edging had
been present:

> [B]ecause nothing in the record sheds any light on the
> duration of the unsafe condition that allegedly caused
> Plaintiff's [injury], the Court fails to see how it can be said
> that a "reasonably timed" inspection would have uncovered

46

this condition. Rather, it is a matter of pure conjecture whether inspections at any particular interval would have enabled [Menard] to identify and remediate the condition that allegedly caused Plaintiff's [injury]. Moreover, no witness in this case—whether Plaintiff . . . or any [Menard] employee—claims to have seen [the black edging] in the area where Plaintiff [was injured], so it is not clear what an inspection of this area would have revealed.

*Kassab*, 2017 WL 2880086, at *5; *see Whitaker*, 2024 WL 295264, at *3 ("[P]laintiff seems to suggest that notice can be inferred because defendant failed to adequately inspect its premises, but this argument circles us back to the lack of evidence regarding the length of time the hazard was present. Even assuming arguendo that defendant had a legal duty to thoroughly inspect the floors very often, plaintiff's concession that there was no way to know that the hazard had been present for even a full minute is fatal to her claim. It cannot be established that frequent inspections would or should have uncovered the [hazard] in the absence of any evidence regarding how long it had been present, especially in light of plaintiff's concession that it could have been there for mere seconds.").

For the reasons set forth above, Plaintiff "fail[s] to present evidence showing that the [black edging] was of such a character or

existed for a sufficient time that [Menard] should have discovered it."
*Russell*, 2021 WL 3566333, at *6. As a result, Plaintiff does not
establish that Menard had constructive notice of the hazard. *See
Lowrey*, 500 Mich. at 11–12 (concluding that the plaintiff "failed to
present any evidence of constructive notice" because she "presented no
evidence that the hazardous condition . . . was of such a character that
the defendant should have had notice of it" and presented no "evidence
as to when the condition arose").

In sum, Plaintiff does not meet her burden of showing that
Menard had actual or constructive notice of the hazard, which is an
essential element of her premises liability claim. Nor does Plaintiff
show that notice can be inferred through Menard's creation of the
hazard. No reasonable jury could find that Menard had notice of the
black edging. Accordingly, the Court grants summary judgment to
Menard on Plaintiff's premises liability claim in Count 1.[14]

---

[14] In addition to arguing that Plaintiff fails to present evidence of notice,
Menard seeks summary judgment as to Plaintiff's premises liability claim on the
grounds that "there is insufficient evidence to create a genuine issue of material fact
regarding causation." (ECF No. 11, PageID.244.) The Court finds it unnecessary to
address causation because the lack of evidence in the record regarding notice is
dispositive. As set forth above, Plaintiff's failure to provide evidence of actual or
constructive notice—an essential element of a premises liability claim—entitles

> ### *iii.   Plaintiff Fails to Address her Gross Negligence Claim (Count 2) and Fails to Offer Sufficient Proof as to that Claim*

Plaintiff's claim in Count 2 is titled "Negligence/Gross Negligence." (ECF No. 1-2, PageID.15.) The Court previously determined that Plaintiff cannot proceed with an ordinary negligence

---

Menard to summary judgment on Plaintiff's premises liability claim. *See Smith v. Menard, Inc.*, No. 21-10660, 2023 WL 5232896, at *5 (E.D. Mich. Aug. 14, 2023) (granting the defendant's motion for summary judgment as to the plaintiff's premises liability claim because the plaintiff "fail[ed] to establish a prima facie case with respect to" that claim, given that the plaintiff "failed to present evidence that Defendant had actual or constructive notice"); *Lowrey v. LMPS & LMPJ, Inc.*, 500 Mich. 1, 11 (2016) ("hold[ing] that plaintiff failed to proffer evidence sufficient to demonstrate a question of fact regarding defendant's actual or constructive notice of the hazardous condition, and defendant was entitled to summary disposition on this basis"); *Whitaker v. Meijer Inc.*, No. 363242, 2024 WL 295264, at *2 (Mich. Ct. App. Jan. 25, 2024) ("The plaintiff has the burden to prove that the defendant had actual or constructive notice, and the defendant is entitled to summary disposition if the defendant is able to demonstrate 'that [the] plaintiff failed to present sufficient evidence of notice.'" (alteration in original) (quoting *Lowrey*, 500 Mich at 10)); *Darnell v. Wal-Mart Stores, Inc.*, No. 359970, 2023 WL 2052180, at *4 (Mich. Ct. App. Feb. 16, 2023) ("[T]he trial court properly granted [the defendant's] motion for summary disposition based on [the plaintiff's] failure to establish that [the defendant] had notice of the hazardous condition . . . ."), *appeal denied*, 512 Mich. 912 (2023); *Croskey v. FCA US, LLC*, No. 350936, 2021 WL 137618, at *2 (Mich. Ct. App. Jan. 14, 2021) (concluding that the plaintiff's failure "to proffer evidence sufficient to demonstrate a question of fact regarding [the] defendant's actual or constructive notice of the allegedly dangerous condition" entitled the defendant "to summary disposition of [a] premises liability action"); *Valdes v. Menard, Inc.*, No. 344073, 2019 WL 6340263, at *5 (Mich. Ct. App. Nov. 26, 2019) ("Because there was no evidence that defendant had actual or constructive notice of any allegedly dangerous condition on the premises, the trial court erred by denying defendant's motion for summary disposition.").

claim because her claim sounds in premises liability. To the extent a claim of gross negligence remains in the case, the Court grants summary judgment to Menard as to that claim.

Plaintiff does not address a gross negligence claim in her response to Menard's motion, which seeks summary judgment as to all claims and dismissal of the entire lawsuit against it. (ECF No. 11, PageID.228.) "When a litigant fails to address a claim in response to a motion for summary judgment, that claim is deemed abandoned or forfeited." *Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 324 (6th Cir. 2023) (citing *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 564 n.1 (6th Cir. 2021)); *see Hua v. Home Depot U.S.A., Inc.*, 452 F. Supp. 3d 698, 704 (E.D. Mich. 2020) ("A plaintiff's failure to address a claim in response to a motion for summary judgment on that claim 'demonstrates abandonment and waiver of the claim.'" (quoting *Crampton v. Kroger Co.*, 213 F. Supp. 3d 910, 913 (E.D. Mich. 2016); citing *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013); *Clark v. City of Dublin*, 178 F. App'x 522, 525 (6th Cir. 2006))); *Smith v. Menard, Inc.*, No. 21-10660, 2023 WL 5232896, at *5 n.3 (E.D. Mich. Aug. 14, 2023) ("A party is 'deemed to have abandoned a claim

when [the party] fails to address it in response to a motion for summary judgment.'" (alteration in original) (quoting *Brown*, 545 F. App'x at 372)). Therefore, Plaintiff abandoned or forfeited her gross negligence claim by not addressing it in her response to Menard's summary judgment motion.

Plaintiff's gross negligence claim is subject to dismissal for an additional reason: Plaintiff fails to present sufficient evidence to support such a claim. According to the Sixth Circuit,

> [t]he Michigan Supreme Court [has] held gross negligence is "akin to willful, wanton, or reckless misconduct." *Dedes v. Asch*, 446 Mich. 99, 521 N.W.2d 488, 493 (1994). "[E]vidence of ordinary negligence does not create a material question of fact concerning gross negligence." *Maiden v. Rozwood*, 461 Mich. 109, 597 N.W.2d 817, 824 (1999). A valid claim for gross negligence requires "proof of conduct 'so reckless as to demonstrate a substantial lack of concern for whether an injury results.'" *Id.* (citing MICH. COMP. LAWS § 691.1407(7)(a)).

*Reilly v. Vadlamudi*, 680 F.3d 617, 627 (6th Cir. 2012).

Here, Plaintiff does not offer proof that Menard's conduct was "so reckless as to demonstrate a substantial lack of concern for whether an injury result[ed]" to her. *Id.* The Court therefore grants summary judgment to Menard on Plaintiff's gross negligence claim. *See Stacy v.*

*HRB Tax Grp., Inc.*, 516 F. App'x 588, 591–92 (6th Cir. 2013) ("The district court properly dismissed the gross negligence claim [on summary judgment], as Plaintiffs did not present sufficient evidence such that reasonable minds could differ regarding whether [the defendant's] conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury resulted." (citing *Xu v. Gay*, 257 Mich. App. 263, 269–71 (2003))).

Accordingly, Menard is entitled to summary judgment on Plaintiff's gross negligence claim in Count 2.

### iv.    *Plaintiff Fails to Establish that* Res Ipsa Loquitur *(Count 3) Applies*

Count 3 of the complaint is titled "*Res Ipsa Loquitur*." (ECF No. 1-2, PageID.18.) Menard argues that the elements of *res ipsa loquitur* are not met. (ECF No. 11, PageID.245.) Plaintiff disagrees. She asserts that the elements are satisfied. (ECF No. 15, PageID.602, 605.)

*Res ipsa loquitur* "is not an independent cause of action." *Pugno*, 326 Mich. App. at 19. Rather, it

> is an evidentiary rule that allows a plaintiff to "create an inference of negligence when the plaintiff is unable to prove the actual occurrence of a negligent act." *DeBusscher v. Sam's East, Inc.*, 505 F.3d 475, 481 (6th Cir. 2007) (citing

*Jones v. Porretta*, 405 N.W.2d 863, 872 (Mich. 1987)).
"Ultimately, res ipsa loquitur is 'merely one kind of case of
circumstantial evidence, in which the jury may reasonably
infer both negligence and causation from the mere
occurrence of the event and the defendant's relation to it.'"
*Ramadan*, 504 F. Supp. 3d at 709 (quoting *Pugno*, 930
N.W.2d at 405).

*Dajlani*, 2021 WL 5303925, at *4.

In order

[f]or *res ipsa loquitur* to apply,

> (1) the event must be of a kind which ordinarily
> does not occur in the absence of someone's
> negligence;
>
> (2) it must be caused by an agency or
> instrumentality within the exclusive control of
> the defendant;
>
> (3) it must not have been due to any voluntary
> action or contribution on the part of the plaintiff;
> and
>
> (4) evidence of the true explanation of the event
> must be more readily accessible to the defendant
> than to the plaintiff.

*Pugno*, 930 N.W.2d at 404. In addition, a "plaintiff must also
produce some evidence of wrongdoing beyond the mere
happening of the event." *Id.*

*Ramadan*, 504 F. Supp. 3d at 709. "The issue of whether the doctrine of res ipsa loquitur is applicable to a particular case is a question of law." *Pugno*, 326 Mich. App. at 19 (citing *Jones v. Porretta*, 428 Mich. 132, 154 n.8 (1987)).

Menard argues that Plaintiff does not establish the second element of *res ipsa loquitur*. (ECF No. 11, PageID.245–246.) Menard also argues that Plaintiff fails to produce evidence of wrongdoing. (*Id.* at PageID.246.) The Court agrees.

"Element two [of *res ipsa loquitur*] requires a plaintiff to show that the agency or instrumentality that caused the accident was in the exclusive control of the defendant." *Ramadan*, 504 F. Supp. 3d at 711 (citing *Pugno*, 326 Mich. App. at 18–20). This court has noted that

> [m]any cases applying Michigan law support finding that merchandise that is displayed in stores is not within the exclusive control of the defendant because customers also handle displayed merchandise. *See Valdes v. Menard, Inc.*, No. 344073, 2019 WL 6340263, at *4 (Mich. Ct. App. Nov. 26, 2019) (holding a box of tiles on display was not within the exclusive control of defendant); *Boyer v. Target Corp.*, No 251790, 2005 WL 602563, at *2 (Mich. Ct. App. Mar. 15, 2005) (holding that display fireplace was not in the exclusive control of defendant); *Vance v. TJX Companies, Inc.*, No. 10-13510, 2011 WL 3840341, at *5 (E.D. Mich. Aug. 30, 2011)

54

(holding that a wall hanging was not in the exclusive control
of defendant).

*Dajlani*, 2021 WL 5303925, at *6.

In addition to the cases cited above—*Valdes*, *Boyer*, and *Vance*—

*Rippy v. Home Depot U.S.A., Inc.*, 2010 WL 891154, at *3 n.6, is another

case in which store merchandise was found to not be in the defendant's

exclusive control. In *Rippy*, a premises liability case, a box of tiles fell

on the plaintiff's foot. *Id.* at *1. The plaintiff "took a box of vinyl tiles

from the top of a stack, at about waist level. As he reached to lift the

box, another box fell on his right foot." *Id.* His wife testified that the

boxes were unorganized and "not stacked neatly on top of each other."

*Id.* Regarding *res ipsa loquitur*, the *Rippy* court stated:

> Clearly, this doctrine is inapplicable where the stacked boxes
> of tile were not within the store's exclusive control and
> Plaintiff has proffered no evidence of the store's
> wrongdoing. . . . [A] customer could have easily left boxes in
> disarray before an associate had an opportunity to walk
> through and tend to the display.

*Id.* at *3 n.6; *see Ramadan*, 504 F. Supp. 3d at 712–13 ("The *Valdes*,

*Boyer*, *Vance*, and *Rippy* courts all held that the defendants did not

have exclusive control because the products that injured the plaintiffs—

the tiles and the wall hanging—could be handled by other customers.").

Like in *Rippy*, *res ipsa loquitur* does not apply here due to Plaintiff's failure to show exclusive control as well as her failure to show wrongdoing.

Plaintiff does not establish that the black edging was in Menard's exclusive control. Plaintiff cites to no evidence in her response that demonstrates that this element of *res ipsa loquitur* is met. The parties agree that the black edging was "misplaced merchandise." (ECF No. 11, PageID.228, 246; ECF No. 15, PageID.583.) The cases referenced above—*Valdes*, *Boyer*, *Vance*, and *Rippy*—found that merchandise on display in a store was not in the defendant's exclusive control because it could be handled by customers. *See Ramadan*, 504 F. Supp. 3d at 712–13. Plaintiff provides no basis for the Court to conclude that the black edging in this case is distinguishable from the merchandise at issue in those cases. Moreover, there is no assertion by the parties that the black edging was a fixture that was installed or maintained by Menard, and therefore, was in Menard's exclusive control. *See Dajlani*, 2021 WL 5303925, at *6 ("The case law supports finding that the shelves[, a fixture,] were in the exclusive control of [the defendant]." (citing *Ramadan*, 504 F. Supp. 3d at 713; *Correia-Massolo v. Bed Bath &*

56

*Beyond, Inc.*, No. 08-14857, 2010 WL 3842352, at *5 (E.D. Mich. Sept. 27, 2010))). During her deposition, Plaintiff testified that she did not see the black edging before it struck her and that she does not know from where it fell. (ECF No. 11-2, PageID.258, 261 ("I don't know where from the top" the black edging fell.).) Given that one or more customers could have handled the black edging before it fell, Plaintiff does not establish that the black edging was in Menard's exclusive control. A jury could not reasonably conclude that element two of *res ipsa loquitur* is met.

In her response, Plaintiff argues that the second element of *res ipsa loquitur* is satisfied based on the Michigan Court of Appeals' decision in *Pugno*. (ECF No. 15, PageID.605.) There, the court of appeals concluded that "the trial court did not err when it provided the jury instruction on res ipsa loquitur." *Pugno*, 326 Mich. App. at 23. The court of appeals found that "[t]he last three elements of res ipsa loquitur [we]re . . . established" in part because "[t]he evidence show[ed] that [the defendant] was in exclusive control of the premises." *Id.* Plaintiff argues that the facts in this case are "the same" as those in *Pugno*, and she argues that Menard "had exclusive control of the premises." (ECF No. 15, PageID.605.) But Plaintiff fails to point to

evidence that demonstrates exclusive control by Menard, as discussed above. In addition, Plaintiff fails to address the court of appeals' finding in *Pugno* that certain evidence showed that the dangerous condition at issue in that case—a stack of pallets—was in the defendant's control and was not controlled by third parties. *See Pugno*, 326 Mich. App. at 23 (The defendant "claims that the [third-party] vendors also had control of the pallets, but [the defendant's owner] testified that the pallets had been at the [defendant's] warehouse for almost a week before the event occurred. Therefore, this argument is without merit."). Here, Plaintiff does not point to evidence that establishes that third parties lacked control over the black edging. For these reasons, the Court finds that Plaintiff's argument lacks merit.

Plaintiff also does not present evidence of wrongdoing by Menard, which she must do to proceed on a theory of *res ipsa loquitur*. *See Cooper-James v. Texas Roadhouse of Roseville*, No. 293797, 2010 WL 4868059, at *2 (Mich. Ct. App. Nov. 30, 2010) (finding *res ipsa loquitur* inapplicable because "plaintiff must produce some evidence of wrongdoing beyond the mere happening of the event, *Fuller v. Wurzburg Dry Goods Co.*, 192 Mich. 447, 448, 158 N.W. 1026 (1916),

and plaintiff failed to do so"). Plaintiff provides no evidence as to where the black edging was located before it fell on her. She testified that her "theory of how things happened" is that the employee who was in the aisle where the incident took place "must have moved something that . . . triggered a chain reaction and—maybe [the black edging] was just hanging by a hair or something, . . . and it just made it fall on top of my head." (ECF No. 11-2, PageID.271.) But this testimony does not constitute evidence of wrongdoing by Menard "beyond the mere occurrence of the accident." *Ramadan*, 504 F. Supp. 3d at 716 (citing *Pugno*, 326 Mich. App. at 19–20). "A plaintiff may not simply claim ignorance of the impetus of an accident, make baseless guesses at why the accident happened, and still expect to prevail on a negligence claim." *Boyer*, 2005 WL 602563, at *2 (citing *Latham v Nat'l Car Rental Sys., Inc.*, 239 Mich. App. 330, 341–43 (2000)). Plaintiff fails to show that Menard did something wrong.

Because Plaintiff does not demonstrate that the black edging was in Menard's exclusive control and because she does not provide proof of wrongdoing by Menard, *res ipsa loquitur* is inapplicable.

59

> v.    *Plaintiff Fails to Establish a Prima Facie Claim of*
>        *Negligent Training and Supervision (Count 4)*

Menard seeks summary judgment as to Plaintiff's claim of negligent training and supervision in Count 4 because "[t]here is no evidence on [sic] the record regarding negligent supervision/training of anyone." (ECF No. 11, PageID.247.) Plaintiff argues that there is "a genuine issue of material fact as to whether or not the training and/or supervision of Menard, Inc.'s employees was negligent." (ECF No. 15, PageID.606.)

Employers are subject to direct liability "for their negligence in . . . training[ ] and supervising their employees." *Zsigo v. Hurley Med. Ctr.*, 475 Mich. 215, 227 (2006). This court has stated that

> [t]o sustain such a claim, a plaintiff must produce evidence "of the appropriate standard for . . . [training] or supervising" the relevant class of employee, *Sanders*, 86 F. Supp. 2d at 746, as well as evidence demonstrating that the employer knew or should have known of the employee's propensity to engage in the challenged conduct, *see Hersh*, 189 N.W.2d at 289; *Isely*, 880 F. Supp. at 1146.

*Veran v. United States*, 305 F. Supp. 2d 765, 771 (E.D. Mich. 2004); *see Poe v. City of Detroit*, 179 Mich. App. 564, 578–79 (1989) (concluding as a matter of law that the plaintiff "failed in her burden to present a

prima facie case of negligence" under theories of negligent training and supervision because the plaintiff "presented no evidence that the city [defendant] was deficient or otherwise departed from an appropriate standard of care for the transportation industry in . . . training and supervising [its employee, a bus driver involved in an accident]. Nor did plaintiff prove that [the employee] was an incompetent bus driver at the time of the accident."); *Dobos v. Wu*, No. 353926, 2021 WL 5497829, at *6 (Mich. Ct. App. Nov. 23, 2021) (stating that claims of negligent training and negligent supervision "require 'actual or constructive knowledge by the employer that would make the specific wrongful conduct perpetrated by an employee predictable'" (quoting *Mueller v. Brannigan Bros. Rests. & Taverns LLC*, 323 Mich. App. 566, 575 (2018))).

In this case, Plaintiff does not satisfy her evidentiary burden to sustain her claim of negligent training and supervision. Plaintiff identifies "no evidence of the appropriate standard and no evidence of what [Menard] knew or should have known." *Sanders v. Sw. Airlines Co.*, 86 F. Supp. 2d 739, 746 (E.D. Mich. 2000). Plaintiff argues that "[t]he testimony of [Menard's] employees indicates there was no

training at all regarding safety and what to do with misplaced merchandise. (Exhibits 5 and 6)." (ECF No. 15, PageID.606.) But Plaintiff does not "provide evidence that it was unreasonable for a store of this type to fail to provide this training." *Olshansky v. Fam. Farm & Home, Inc.*, No. 350836, 2021 WL 650585, at *3 (Mich. Ct. App. Feb. 18, 2021). She does not show that Menard "was required to specifically train its employees for this particular safety hazard." *Id.* Therefore, the evidence Plaintiff references is insufficient for her negligent training claim to survive Menard's summary judgment motion. *Id.* (finding that the plaintiff's "only evidence" related to negligent training—"statements from two employees that they had not been trained in responding to 'an airborne contamination'"—was insufficient "to survive a motion for summary disposition on [the] negligently training . . . claim" in a case in which the plaintiff alleged injuries due to her exposure to airborne irritants at a store).

In addition, Plaintiff presents no evidence that shows negligent supervision by Menard, and the Court is not required to search the record for evidence in support of this claim. *See Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442, 449 (6th Cir. 2008) ("It is

not the district court's . . . duty to search through the record to develop a party's claims; the litigant must direct the court to evidence in support of its arguments before the court." (internal citations omitted)); *Drews v. Am. Airlines, Inc.*, 68 F. Supp. 3d 734, 739 (E.D. Mich. 2014) ("[T]he trial court is not required to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" (quoting *Street*, 886 F.2d at 1479–80)); *Russell*, 2022 WL 18955863, at *3 ("[A] district court 'is not required to search the record for some piece of evidence which might stave off summary judgment." (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997))). With respect to her claim of negligent supervision, Plaintiff has not satisfied her "affirmative duty to direct the [C]ourt's attention to those specific portions of the record upon which [she] seeks to rely to create a genuine issue of material fact." *Drews*, 68 F. Supp. 3d at 739 (quoting *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001)); *see* Fed. R. Civ. P. 56(c)(1).

Having cited no evidence of the proper standard of care for training and supervising employees in the retail industry, Plaintiff fails to establish a prima facie claim of negligent training and supervision.

*See Smith v. Merrill Lynch Pierce Fenner & Smith*, 155 Mich. App. 230, 235 (1986) ("[P]laintiffs failed to present any competent evidence regarding the proper standard of care in . . . supervising stockbrokers or to establish that the standard was violated by defendant. . . . Absent any evidence, plaintiffs failed to establish a prima facie claim of negligent . . . supervision."). Plaintiff also does not establish a prima facie claim of negligent training and supervision because she fails to make any showing that Menard "knew or should have known that [John Doe or a different employee] was likely to act harmfully toward Plaintiff."[15] *Sanders*, 86 F. Supp. 2d at 746; *see Damrow v. Holbrook-Patterson, Inc.*, No. 90–2342, 1991 WL 278794, at *2 (6th Cir. Dec. 23, 1991) (concluding that "summary judgment was not appropriate in regard to" the plaintiff's claims of negligent training and supervision,

---

[15] In her response, Plaintiff argues that there is a genuine issue of material fact as to her negligent training and supervision claim based partly on Birnbach's opinion that "Menard, Inc. had insufficient safety guidelines." (ECF No. 15, PageID.606.) The admissibility of Birnbach's opinion is currently challenged by Menard in a separate motion. (ECF No. 10.) Even if the Court were to consider what Plaintiff indicates is Birnbach's opinion for the narrow purpose of analyzing her negligent training and supervision claim, this particular opinion sheds no light on the applicable standard of care or on what Menard knew or should have known. Therefore, Birnbach's opinion would not create a genuine issue of material fact as to the negligent training and supervision claim.

among other claims, because it was reasonable to infer that the defendant "knew, or had reason to know of, [its employee's] behavior").

Because Plaintiff does not present evidence that establishes a prima facie claim of negligent training and supervision, summary judgment is granted to Menard as to Plaintiff's claim of negligent training and supervision in Count 4.

### B. Menard's Motion to Exclude the Testimony of Plaintiff's Expert, Jerald Birnbach

Menard asks that the Court exclude the testimony of Plaintiff's expert, Jerald Birnbach. Menard states that Birnbach's opinion violates Federal Rule of Evidence 702 because it is "completely based on speculation," is not reliable, will not assist the jury, and is "totally an inappropriate legal conclusion." (ECF No. 10, PageID.75.) Plaintiff's response to Menard's motion was stricken from the docket because it was untimely. (ECF No. 14.) As a result, Plaintiff has not met her burden of "show[ing] by a 'preponderance of proof' that [Birnbach] is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of issues relevant to the case." *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n.10 (1993)); *see* Fed. R.

Evid. 702. Regardless, because the Court did not consider Birnbach's opinion in deciding to grant Menard's summary judgment motion, Menard's motion to exclude Birnbach's testimony is moot.

## V.   Conclusion

For the reasons set forth above, Menard's motion for summary judgment (ECF No. 11) is GRANTED. Menard's motion to exclude the testimony of Plaintiff's expert, Jerald Birnbach (ECF No. 10), is DENIED AS MOOT.

IT IS SO ORDERED.

Dated: March 29, 2024                      s/Judith E. Levy
     Ann Arbor, Michigan          JUDITH E. LEVY
                                      United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 29, 2024.

                                     s/William Barkholz
                                     WILLIAM BARKHOLZ
                                     Case Manager